**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICIA CERTO,**

                                        **Plaintiff,**

                **v.**                                                **5:11-CV-1142**
                                                                        **(FJS)**

**CAROLYN W. COLVIN, Acting Commissioner**
**of Social Security,**

                                        **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**OLINSKY LAW GROUP**                     **HOWARD D. OLINSKY, ESQ.**
300 South State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**       **AMANDA J. LOCKSHIN, ESQ.**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Currently before the Court are the parties' cross-motions for judgment on the pleadings.

_See_ Dkt. Nos. 13, 15.

## II. BACKGROUND

On December 19, 2009, Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income. *See* Dkt. No. 9, Administrative Record ("AR") at 142-49. The Social Security Administration initially denied both claims on January 29, 2010. *See* AR at 64-71. On March 2, 2010, Plaintiff filed a written request for a review of her application in the form of a hearing before an Administrative Law Judge ("ALJ"). *See id.* at 72-74. On April 11, 2011, ALJ Scott M. Staller held a hearing via video conference, at which attorney Marcie P. Eaton represented Plaintiff. *See* AR at 24-54. Plaintiff alleged a closed period of disability from November 30, 2008, through October 30, 2010, due to chronic back pain resulting from degenerative disc disease of the lumbar and cervical spine; chronic bilateral edema of the lower extremities; arthritis in the knees and lumbar spine; fibromyalgia; obesity; constant pain resulting from a car accident on February 5, 2008; and pain from a rolled right ankle and fractured fifth metatarsal in her right foot. *See* AR at 30, 146, 170, 183. By decision dated April 15, 2011, the ALJ denied Plaintiff's application for Disability Insurance Benefits and for Supplemental Security Income. *See* AR at 12-19. On May 10, 2011, Plaintiff filed a Request for Review of Hearing Decision, which the Appeals Council denied on August 8, 2011. *See* AR at 1-3, 6-8.

Having exhausted her administrative remedies, Plaintiff commenced this action on September 23, 2011, seeking review of Defendant's final decision. *See* Dkt. No. 1. In support of her motion for judgment on the pleadings, Plaintiff argued that the ALJ erred when he (1) afforded "significant weight" to the opinion of Plaintiff's physical therapist, (2) failed to mention the amount of weight, if any, he afforded the opinion of Plaintiff's treating Physician's Assistant,

(3) failed to recontact Plaintiff's rheumatologist for clarification of Plaintiff's functional limitations in order to develop the record, (4) failed to apply the appropriate legal standards in assessing Plaintiff's credibility, (5) failed to conduct the required function-by-function analysis when determining Plaintiff's residual functional capacity, and (6) determined that Plaintiff could return to her past relevant work.

## III. DISCUSSION

**A.    Standard of review**

### *1. Correct legal principles and substantial evidence*

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  In reviewing an ALJ's decision, the court employs a two-prong test.  First, the court must decide if the ALJ applied the correct legal principles.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation and other citation omitted).

The court must determine whether the ALJ applied the correct legal standards because

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Accordingly, the court will not uphold an ALJ's decision if it is based on an erroneous view of

the law. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983).

If the court determines that the ALJ applied the correct legal principles, the court must then decide whether "substantial evidence" supports the ALJ's findings. *See Johnson*, 817 F.2d at 985 (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that amounts to "'more than a mere scintilla,'" defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where evidence is deemed susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (citations omitted). If there is substantial evidence to support the ALJ's findings, the court must sustain those findings "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted); *see also Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) (citations omitted). In other words, the court must afford the ALJ's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

### 2. Five-step determination of disability

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

§ 1382c(a)(3)(A).  In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating disability claims, the ALJ follows a five-step sequential evaluation process:

> First, the [ALJ] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [ALJ] next
> considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [ALJ] will consider
> him disabled without considering vocational factors such as age,
> education, and work experience[.] . . . Assuming the claimant does
> not have a listed impairment, the fourth inquiry is whether despite
> the claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is
> unable to perform his past work, the [ALJ] then determines
> whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

"[T]he claimant bears the burden of proving disability as to the first four steps."  *Berry*, 675 F.2d

at 467.  If the claimant meets her burden, then the Commissioner has the burden of proof at the

fifth step.  *See id.*

-5-

**B.    Whether the ALJ improperly afforded "significant weight" to the opinion of Plaintiff's physical therapist**

The ALJ must consider all relevant evidence in the record, including opinion evidence from "other medical sources" who do not qualify as "acceptable medical sources," when making a determination about whether an individual is disabled. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). "Other medical sources" include, but are not limited to, nurse practitioners, physicians' assistants, and chiropractors. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The opinions of physical therapists "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006). The ALJ "'"has discretion to determine the appropriate weight to accord to [the other source's] opinion based on all the evidence before him [or her] . . . ."'" *Proper v. Astrue*, No. 6:10-CV-01221, 2012 WL 1085812, *9 (N.D.N.Y. Feb. 28, 2012) (quotation and footnote omitted); *Cascio v. Astrue*, No. 10-CV-5666, 2012 WL 123275, *3 (E.D.N.Y. Jan. 17, 2012) (quoting *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)).

In weighing the opinion of a physical therapist, the ALJ considers the same factors that he would assess when evaluating medical opinions for "acceptable medical sources." *See Bulger v. Astrue*, No. 6:07-CV-542, 2009 WL 1924767, *11 (N.D.N.Y. July 1, 2009) (citing SSR 06-03p). Depending on the particular facts of the case, and after applying the factors for weighing opinion evidence, an ALJ may determine that an opinion from an "other medical source" outweighs the opinion of an "acceptable medical source." *See Cavanaugh v. Astrue*, No. 1:08-CV-0637, 2009 WL 4264370, *7 (N.D.N.Y. Nov. 20, 2009) (quoting *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)). The ALJ should explain the

weight he afforded to the opinions of "other sources" or ensure that a subsequent reviewer can follow his reasoning for affording the opinion such weight.  *See Bulger*, 2009 WL 1924767, at *11.

The ALJ must assess the following factors when evaluating the weight to afford to medical opinions, whether they are accepted medical sources or other sources: (1) examining relationship – more weight will be given to the opinion of a source who has examined the claimant; (2) treatment relationship – more weight will be given to an opinion of a treating source; (3) supportability – more weight will be given to an opinion if it is supported by relevant evidence from medical sources; (4) consistency – more weight will be given to an opinion that is consistent with other evidence in the record as a whole; (5) specialization – more weight will be given to the opinion of a specialist about medical issues related to her area of specialty; and (6) other factors that either party brings forward for consideration.  *See* 20 C.F.R. §§ 404.1527(c)(1)-(c)(6), 416.927(c)(1)-(c)(6).

In this case, the ALJ afforded significant weight to physical therapist Eric Schmidt's notes about Plaintiff's rehabilitation progress.  *See* AR at 18.  The ALJ emphasized the fact that Mr. Schmidt had had multiple opportunities to treat Plaintiff and to assess her functional abilities.  *See id.*  The record indicates that, following Plaintiff's automobile accident, Mr. Schmidt examined and treated her on March 17, 2008, March 24, 2008, March 31, 2008, and April 16, 2008.  *See* AR at 255-66.  In addition, the ALJ indicated that Mr. Schmidt's treatment notes, along with the medical opinion of Dr. Sandra Boehlert, were consistent with and supported the assessments of Nurse Practitioner Kristy Ventura and Dr. Thomas Sullivan, M.D., which indicated "that the claimant had no more than mild to moderate exertional limitations . . .

." *See* AR at 18.

The ALJ clearly set forth his reasons for affording the notes of Mr. Schmidt significant weight and appropriately assessed those notes based on the treating relationship that Mr. Schmidt had with Plaintiff as well as the consistency of the notes with other medical evidence in the record regarding Plaintiff's impairments. Therefore, the Court finds that the ALJ properly evaluated M. Schmidt's notes and did not err when he afforded them significant weight.

**C.    Whether the ALJ erred by failing to mention what weight, if any, he afforded to the opinion of Plaintiff's treating Physician's Assistant**

As noted, the ALJ must consider all relevant evidence in the record when making a determination about whether an individual is disabled. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). In addition to evidence from "acceptable medical sources," the ALJ may also rely on evidence from "other medical sources," including nurse practitioners and physicians' assistants. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The ALJ may rely on information from such sources to show the severity of an individual's impairment(s) and how it affects the individual's ability to function. *See* SSR 06-03p, 2006 WL 2329939, at *2.

An ALJ's failure specifically to explain the weight he afforded to evidence from other medical sources is considered "harmless" if such evidence is consistent with other evidence and opinions from acceptable medical sources. *See Carway v. Astrue*, No. 06 Civ. 13090, 2011 WL 924215, *4 (S.D.N.Y. Mar. 16, 2011); *Skibinski v. Astrue*, No. 08-CV-0482-A, 2010 WL 986524, *4 (W.D.N.Y. Mar. 17, 2010) (citation omitted); *see also Pease v. Astrue*, No. 5:06-CV-0264, 2009 WL 4371779, *8 (N.D.N.Y. Sept. 17, 2008) (finding harmless error where the ALJ did not specifically state the weight he afforded to a treating physician's opinion but did cite the

physician's records and conclusions throughout the decision).  Moreover, the mere fact that an ALJ did not specifically state the weight he afforded to a medical source's opinion does not mean that he did not properly consider it.  *See Pease*, 2009 WL 4371779, at *8 (citation and footnote omitted).

In this case, the ALJ cited Physician's Assistant Tim Button's report in his analysis of Plaintiff's RFC.  Specifically, the ALJ cited to Exhibit 16F, p. 5, which is part of Mr. Button's report notes regarding his examination of Plaintiff on June 8, 2010.  *See* AR at 16, 354-55.  The ALJ determined that Plaintiff's physical limitations as a result of her fibromyalgia were "estimated to be no more than moderate" based in part on the information from Mr. Button's report.  *See* AR at 16, 354.  Specifically, Mr. Button indicated that Plaintiff's impairments were "moderate with limited mobility" and that she was "moderately limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, and stairs and other climbing.  *See* AR at 354-55.  Mr. Button indicated that he believed Plaintiff's impairments had not lasted at least twelve months and were not expected to last at least twelve months.  *See* AR at 355.  Mr. Button also noted that a "fast paced work environment" was contraindicated for Plaintiff.  *See id.*  The ALJ's reference to Mr. Button's report indicates that he did, in fact, properly consider that report in reaching his conclusion that Plaintiff was not disabled.

In addition, Mr. Button's report is consistent with other medical reports in the record.  In her December 24, 2009 consultative examination report, Dr. Boehlert indicated that Plaintiff was diagnosed with generalized myalgia and had "mild to moderate limitation to exertional activity." *See* AR at 305.  Dr. Neupane also diagnosed Plaintiff with "severe tenderness on her fibromyalgia points consistent with active fibromyalgia" during an initial rheumatology

-9-

consultation on March 11, 2010.  *See* AR at 361.

Since the ALJ cited to Mr. Button's report in his decision and Mr. Button's notes are consistent with the medical opinions of Dr. Boehlert and Dr. Neupane, based on their examinations of Plaintiff, the Court finds that the ALJ properly considered Mr. Button's report and did not err by failing to mention the specific weight he afforded to that report.

**D.    Whether the ALJ erred by failing to recontact Plaintiff's rheumatologist for clarification of Plaintiff's functional limitations in order to develop the record**

Since "a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted).  The ALJ must develop a complete medical history for at least the twelve months that precede the month in which the claimant filed her application unless there is a reason to believe that development of an earlier period is necessary or unless it is shown that the claimant's disability began less than twelve months before the claimant filed her application.  *See* 20 C.F.R. §§ 404.1512(d), 416.912(d).  If all of the evidence, including all medical opinion(s), is consistent with and sufficient to determine whether a claimant is disabled, the ALJ will make a determination based on that evidence.  *See* 20 C.F.R. § 404.1520b(a).  If, however, the evidence in the record is insufficient to determine whether an individual is disabled, the ALJ will determine the best course of action to acquire sufficient information.  *See* 20 C.F.R. § 404.1520b(c); *see also Beebe v. Astrue*, 5:10-CV-1467, 2012 WL 3791258, *10 (N.D.N.Y. Aug. 31, 2012).  Among the actions that an ALJ may take to ensure a complete record is to recontact claimant's treating physician, psychologist, or other medical source.  *See* 20 C.F.R.    § 404.1520b(c)(1).

If a claimant alleges that the ALJ erred by failing to recontact a source, the claimant must establish that a gap or inconsistency in the record exists that would compel the ALJ to recontact the source. *See Beebe*, 2012 WL 3791258, *10 (citation omitted). A medical source's retrospective assessment of a claimant's condition will not be necessary if such an assessment would not reveal any useful information or if a medical history has already been provided that is adequate enough to enable the ALJ to make a determination regarding the claimant's disability. *See Perez*, 77 F.3d at 48; *see also Spruill v. Astrue*, No. 06-CV-5762, 2008 WL 4949326, *4 (S.D.N.Y. Nov. 19, 2008) (stating that an ALJ is under no duty to seek additional information before rejecting a claim if the ALJ possesses a complete medical history (citation omitted)). Finally, an ALJ's failure to discuss a medical source's evaluation is harmless where consideration of the report would not have changed the outcome. *See Walzer v. Chater*, No. 93 Civ. 6240, 1995 WL 791963, *9 (S.D.N.Y. Sept. 26, 1995) (stating that the ALJ's failure to discuss a report from Plaintiff's second treating physician in his analysis was a harmless error because the report was consistent with all the other medical testimony that the ALJ considered and would not have changed the ALJ's decision).

In this case, consistent with the regulations, the ALJ obtained a full medical record from Plaintiff's identified treating sources during the twelve-month period prior to her application. Specifically, Plaintiff filed for disability on October 19, 2009, and the record contains medical evidence dating back to Plaintiff's MRI of her lumbar spine on March 16, 2000. *See* AR at 142-49, 370. The ALJ weighed and considered medical notes and reports from physical therapist Eric Schmidt, Dr. Sandra Boehlert, Nurse Practitioner Kristy Ventura, Dr. Thomas Sullivan of Auburn Orthopedics, and Physician's Assistant Tim Button in determining whether Plaintiff was

disabled. *See* AR at 16-18. Furthermore, the record contains a complete copy of Dr. Neupane's detailed notes from Plaintiff's rheumatology examination on March 11, 2010. *See* AR at 359-62. In his assessment, the primary impairments that Dr. Neupane observed were signs consistent with active fibromyalgia, lower extremity edema, and arthritis in Plaintiff's knees. *See* AR at 361. Dr. Neupane's observations concerning these impairments are consistent with the medical reports of Dr. Boehlert and Mr. Button. *See* AR at 16-17, 305, 354.

Plaintiff has failed to identify any gaps or deficiencies in the record that would have triggered the ALJ's duty to seek additional information. Therefore, because the ALJ had before him a record of Plaintiff's medical history that was adequate to determine whether Plaintiff was disabled, the Court finds that the ALJ did not err by failing to recontact Plaintiff's rheumatologist.

**E.    Whether the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility**

It is the function of the ALJ, and not the court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. at 399, 91 S. Ct. at 1426) (other citations omitted). Although the ALJ need not resolve every conflict in the record, "'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983))) (other citations omitted).

In determining the credibility of the claimant's statements, the ALJ must consider the entire record, including the objective medical evidence, the claimant's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the record. *See* SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996). However, it is not "require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*) (citation omitted); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting argument that the ALJ must explicitly reconcile every shred of conflicting testimony); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (stating that "'an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000))).

"The claimant's subjective complaints are an important element of the RFC calculus[.]" *Cornell v. Astrue*, 764 F. Supp. 2d 381, 399 (N.D.N.Y. 2010) (citing *Lewis v. Apfel*, 62 F. Supp. 648, 657-58 (N.D.N.Y. 1999)); *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted).  However, "[s]ubjective symptomatology by itself cannot be the basis for a finding of disability." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 68 (N.D.N.Y. 2012).  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Gernavage v.*

*Shalala*, 882 F. Supp. 1413, 1420 n.7 (S.D.N.Y. 1995).

Although an ALJ "is required to take the claimant's reports of pain and other limitations into account," he is "not required to accept the claimant's subjective complaints without question[.]" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)); *Mimms*, 750 F.2d at 186 (quotation omitted). If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether there is substantial evidence to support his determination. *See Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984); *Valente*, 733 F.2d at 1045 (citations omitted). The ALJ may also find a claimant's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. *See* SSR 96-7p, 1996 WL 374186, at *1.

One strong indicator of the claimant's credibility is its consistency, both internally and with other information in the record. *See id.* The ALJ must consider such factors as the degree to which the claimant's statements are consistent with the objective medical evidence, the consistency of the claimant's own statements, and the consistency of the claimant's statements with other information in the record. *See id.* However, lack of consistency between a claimant's statements and other statements that she has made at other times does not necessarily mean that the claimant's statements are not credible. *See id.*

Symptoms may vary in their intensity, persistence, and functional effects, or may worsen

-14-

or improve with time, and this may explain why the claimant does not always assert the same intensity, persistence, or functional effects of her symptoms. *See id.* Therefore, the ALJ must review the record to determine if there are any explanations for any variations in the claimant's statements about her symptoms and their effects. *See id.*

The regulations establish a two-step procedure for evaluating a claimant's contentions of disability symptoms. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment [] that could reasonably be expected to produce" the level of pain or symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *1. Second, the ALJ must evaluate the intensity and persistence of the symptoms experienced, considering all of the available evidence and, in the event that the claimant's testimony about her pain is not substantiated by objective medical evidence, must engage in a credibility analysis. *See* 20 C.F.R. § 404.1529(c)(3); *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010). In making that assessment, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) other treatment that the claimant receives or has received for relief of her pain or other symptoms; (6) other measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions resulting from her pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Meadors*, 370 F. App'x at 186 n.1.

In this case, the ALJ relied on the record to evaluate Plaintiff's claims concerning the intensity, persistence, and limiting effects of her impairments. *See* AR at 16-17. At the hearing,

the ALJ questioned Plaintiff about the amount of pain resulting from her alleged impairments and any aggravating factors.  Plaintiff testified about having experienced constant lower back pain that would sometimes radiate to her shoulders and neck.  *See* AR at 34.  Plaintiff also talked about how she had some neck pain that came and went following her automobile accident.  *See id.* at 35.  Plaintiff testified about having experienced leg pain and swelling that lasted for five months and prevented her from being able to put on shoes.  *See id.*  When questioned about her edema, Plaintiff testified that it hurt primarily when it was cold, raining, or if she wore uncomfortable shoes.  *See id.* at 36.  Plaintiff testified about the pain she experienced every day from the arthritis in her knees and lower back, which prevented her from squatting on occasion.  *See id.* at 37.  Finally, Plaintiff informed the ALJ that she had recently been experiencing some severe pain in her legs, but only at night when she was lying down.  *See id.*

With regard to the evidence pertaining to Plaintiff's daily activities, the ALJ considered Plaintiff's testimony and Dr. Boehlert's evaluations, both of which indicated that Plaintiff was cooking, dusting, sweeping, washing dishes, showering, bathing, dressing herself, and occasionally doing the laundry and shopping without much or any assistance.  *See* AR at 17, 38-39, 303.  The ALJ also noted that Dr. Boehlert's evaluation indicated that Plaintiff did not use any assisting devices during the examination and did not need help changing for the examination or getting on and off the exam table.  *See id.* at 303.

During the hearing, the ALJ questioned Plaintiff about the different types of medications she had been prescribed.  Plaintiff testified that she had been given Lasix for her edema, which she used to clear up her swelling in a few days after taking it.  *See* AR at 36.  In addition, Plaintiff testified that she had been give Mobic and Cymbalta but had stopped taking the Mobic

because she "didn't like how it was affecting" her.  *See* AR at 40.  Plaintiff further testified that

she had experienced no side effects from taking the Cymbalta, which helped prevent her from

stiffening and remaining mobile.  *See id.* at 41.  In addition, the only other form of treatment that

Plaintiff received to relieve her pain and other symptoms was physical therapy with Mr.

Schmidt.  *See id.* at 255-66.  Plaintiff also indicated to Dr. Boehlert during her consultative

examination that she had reduced her salt intake in order to resolve her edema.  *See* AR at 302.

Since the ALJ thoroughly reviewed the evidence in the record to evaluate Plaintiff's

credibility, the Court finds that there was sufficient evidence in the record to support the ALJ's

determination regarding Plaintiff's credibility.


**F.      Whether the ALJ failed to conduct the required function-by-function analysis when
determining Plaintiff's RFC**

A claimant's RFC represents a finding of the range of tasks she is capable of performing

notwithstanding the impairments at issue.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC

determination is informed by consideration of a claimant's physical abilities, mental abilities,

symptoms, including pain, and other limitations that could interfere with work activities on a

regular and continuing basis.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing [20 C.F.R.] §§ 404.1545, 416.945).  To ascertain a claimant's RFC, an ALJ must assess

her exertional capabilities, addressing her ability to sit, stand, walk, lift, carry, push and pull.

*See* 20 C.F.R. § 404.1545(b).  The ALJ must also consider nonexertional limitations or

impairments, including impairments that result in postural and manipulative limitations.  *See* 20

C.F.R.      § 404.1545(b); 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 200.00(e).

The ALJ's "RFC determination is subject to the overarching requirement that [it] may

only withstand judicial scrutiny if there is substantial evidence in the record to support each of its elements." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008); *see also Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997) (citations omitted). Additionally, the ALJ's RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587 (citation omitted); *see also Perez v. Astrue*, 907 F. Supp. 2d 266, 273 (N.D.N.Y. 2012) (quotation omitted).

The ALJ must consider the claimant's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis. *See* SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). In other words, the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. *See* 20 C.F.R. §§ 416.913(c)(1), 416.969a(a); *Martone*, 70 F. Supp. 2d at 150 (citations omitted). The ALJ can express the claimant's RFC in terms of the exertional levels of work – sedentary, light, medium, heavy, and very heavy – only after he has completed the function-by-function analysis. *See Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.)).

The regulations outline the physical exertion requirements, explaining that, "[t]o determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy and very heavy." 20 C.F.R. § 416.967. The ALJ does not

need to provide a narrative discussion pertaining to each individual function explicitly, but he must provide a sufficient explanation as to how the evidence supports his RFC determination. *See Carway v. Astrue*, No. 06 Civ. 13090, 2011 WL 924215, *3 (S.D.N.Y. Mar. 16, 2011); *Novak v. Astrue*, No. 07 Civ. 8435, 2008 WL 2882638, *3 (S.D.N.Y. July 25, 2008).

In this case, the ALJ relied on medical evidence from physical therapist Eric Schmidt, Physician's Assistant Tim Button, Nurse Practitioner Kristy Ventura, Dr. Thomas Sullivan, and Dr. Sandra Boehlert in assessing Plaintiff's capability to perform work-related functions as well as Plaintiff's own testimony in making his determination that Plaintiff could perform light work.[1] *See* AR at 16-17. Specifically, the ALJ mentioned that Mr. Schmidt's notes and Plaintiff's subjective questionnaire indicated that, at the conclusion of her treatment on April 16, 2008, she was only limited to some degree in vigorous activities, recreation, getting in and out of bed, bathing, and dressing. *See* AR at 255, 257. The ALJ also noted that Dr. Sullivan, in his May 28, 2009 evaluation of Plaintiff, concluded that Plaintiff had no limitation in sitting or using her hands and that her limitations with walking and standing were not expected to last more than ninety days from the time of her examination. *See* AR at 352. The ALJ also relied on Dr. Boehlert's conclusion that Plaintiff had a "mild to moderate limitation for exertional activity," which he concluded supported a finding that Plaintiff was capable of performing the functional activities defined under "light work," along with some "additional postural limitations." *See* AR at 17, 305. Finally, the ALJ cited Mr. Button's report in determining that Plaintiff's functional

---

[1] The regulations define "light work" as work that consists of "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

limitations were "no more than moderate" as a result of her fibromyalgia on June 1, 2010. *See* AR at 355.

Furthermore, Plaintiff testified at the hearing about her capacity to perform work-related activities during the closed period in question between 2008-2010. Plaintiff stated that she could sit and stand for forty-five minutes to an hour before having to move around again in order to prevent her body from becoming stiff. *See* AR at 47. Although Plaintiff stated that she could only stand for about 15 minutes when she had a fracture in her right foot, she also stated that the fracture healed in about six to eight weeks. *See* AR at 36, 47. Plaintiff also indicated that, during that period of time, she had a hand-held lifting restriction between ten and twenty pounds *See* AR at 48. Finally, Plaintiff stated that she would be bothered more by pulling something as opposed to pushing but did not indicate that she was incapable of performing either activity. *See* AR at 48-49.

It is clear from this record that, despite Plaintiff's contention to the contrary, the ALJ did perform a function-by-function analysis of Plaintiff's abilities in determining that Plaintiff had the RFC to perform light work with additional postural limitations. Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's RFC.

**G.     Whether the ALJ's step four determination is legally correct and supported by substantial evidence**

Once an ALJ has determined a claimant's RFC, he will compare that RFC to the physical and mental demands of her past relevant work. *See* 20 C.F.R. § 404.1560(b). "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R.

§ 404.1560(b)(1) (citing § 404.1565(a)).

An ALJ may rely on the testimony of a vocational expert when considering whether a claimant's impairments would permit her to meet the demands of her past relevant work. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed that work or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). If a claimant is capable of performing the exertional requirements of light work, then she is also capable of performing sedentary work as defined in the regulations, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). "A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citing *Bosmond v. Apfel*, 998 WL 851508, at *8). Furthermore, a vocational expert's response to such a question cannot constitute substantial evidence to support a conclusion of no disability. *See id.* (citation omitted).

The "'[p]roper use of vocational testimony presupposes both an accurate assessment of

the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform.'" *Id.* (quoting *Lugo v. Chater*, 932 F. Supp. 497, 503 (S.D.N.Y. 1996)).  Furthermore, "there must be 'substantial evidence to support the assumption upon which the vocational expert based his opinion.'" *Id.* at 212 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

In this case, the ALJ presented two hypotheticals to the Vocational Expert.  The first involved a 48-year-old person at the onset who would have turned fifty on April 27, 2010, with a high school education and the same past relevant work experience as Plaintiff.  *See* AR at 51.  In addition, the person was capable of performing no more than light work as defined in the regulations and could occasionally climb, balance, stoop, kneel, crouch or crawl, and could occasionally push or pull with both lower extremities.  *See id.*  The second hypothetical consisted of these same restrictions except the person was limited to sedentary work.  *See id.* Both of these hypotheticals included all of the limitations and impairments that the ALJ had found Plaintiff had.

In response to these hypotheticals, the Vocational Expert stated that a person with such experience, limitations, and capable of only light work could perform both of Plaintiff's past jobs as an assembler and repair technician.  *See* AR at 51.  The Vocational Expert also stated that a person with such experience, limitations, and capable of only sedentary work could perform Plaintiff's past job as an assembler.  *See id.*

Since the ALJ provided the Vocational Expert with hypotheticals that included all of Plaintiff's limitations, the ALJ was justified in relying on the Vocational Expert's opinion regarding the type of work that Plaintiff could do.  Furthermore, there is substantial evidence in

the record to support the ALJ's RFC assessment.  Therefore, the Court finds that the hypotheticals that the ALJ posed to the Vocational Expert were complete and a proper basis on which the Vocational Expert could base his opinion.  Furthermore, the Court concludes that the ALJ conducted a proper step four analysis.


## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**, and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 27, 2014
      Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior U.S. District Judge